UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER KERSHNER,<br><br>Plaintiff,<br><br>v.<br><br>HILLCREST, DAVIDSON, AND ASSOCIATES LLC,<br><br>Defendant. | No. 2:19-cv-00747-TLN-AC<br><br>**ORDER** |

This matter is before the Court on Plaintiff Christopher Kershner's ("Plaintiff") and Defendant Hillcrest, Davidson, and Associates LLC's ("Defendant") Motions for Summary Judgment. (ECF Nos. 9, 11.) Both motions have been fully briefed. For the reasons set forth below, the Court DENIES the motions.

///
///
///
///
///
///
///

1

I. **FACTUAL AND PROCEDURAL BACKGROUND**[1]

This case arises from Plaintiff's 2018 campaign for city council in Auburn, California. (ECF No. 18-1 at 2.) In August 2018, a local print media company named Gold Country Media ("GCM") contacted Plaintiff to place an advertisement in programs for local high school football games. (*Id.*) Plaintiff ordered an advertisement promoting an event he had organized to raise money for his campaign and the local Veterans of Foreign Wars chapter. (*Id.*) Plaintiff provided GCM with a copy of the advertisement, which included the event's date and location. (*Id.* at 3.) Shortly thereafter, the location of the event changed. (*Id.*) Plaintiff attempted to contact GCM numerous times to update the location listed on the advertisement, but GCM did not respond. (*Id.*) GCM continued to run the advertisement with the incorrect location. (*Id.*) As a result, Plaintiff declined to pay GCM. (*Id.* at 4.)

On February 26, 2019, a commercial debt collector working for Defendant named Travis Wilcher ("Wilcher") called Plaintiff's cell phone and left a voicemail stating he was calling to collect the debt Plaintiff allegedly owed to GCM. (*Id.* at 7.) That same day, Wilcher also left a message on Plaintiff's father's landline telephone and texted Plaintiff's cell phone multiple times regarding the debt. (*Id.* at 9–12.) Wilcher threatened to contact Auburn's mayor and city council if Plaintiff did not pay the debt. (*Id.*)

Plaintiff filed this action on May 1, 2019, alleging Defendant engaged in abusive debt collection practices in violation of (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and (2) the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code § 1788. (*See generally* ECF No. 1.) Both parties filed motions for summary judgment on August 26, 2020 (ECF Nos. 9, 11), oppositions on October 1, 2020 (ECF Nos. 17, 18), and replies on October 8, 2020 (ECF Nos. 19, 20).

II. **STANDARD OF LAW**

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed.

---

[1]   Unless otherwise indicated, the following facts are undisputed.

2

1 R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

2 judgment practice, the moving party always bears the initial responsibility of informing the

3 district court of the basis of its motion, and identifying those portions of "the pleadings,

4 depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

5 which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

6 *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

7 at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

8 solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id*. at

9 324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a

10 party who does not make a showing sufficient to establish the existence of an element essential to

11 that party's case, and on which that party will bear the burden of proof at trial.

12 If the moving party meets its initial responsibility, the burden shifts to the opposing party

13 to establish a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus. Co. v.*

14 *Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*,

15 391 U.S. 253, 288–89 (1968).  In attempting to establish this factual dispute, the opposing party

16 may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts

17 in the form of affidavits, and/or admissible discovery material, in support of its contention that the

18 dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must demonstrate the fact in contention

19 is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson*

20 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence

21 is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*. at 251–52.

22 In the endeavor to establish the existence of a factual dispute, the opposing party need not

23 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

24 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

25 trial."  *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is

26 to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

27 trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's

28 note on 1963 amendments).

1   In resolving the motion, the court examines the pleadings, depositions, answers to
2   interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P.
3   56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The opposing party's
4   evidence is to be believed and all reasonable inferences that may be drawn from the facts pleaded
5   before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.
6   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
7   produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight*
8   *Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally,
9   to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more
10  than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*
11  *Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational
12  trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at 587.

13  **III.   ANALYSIS**

14  It is undisputed that Plaintiff's debt arises from his purchase of advertising to promote an
15  event to raise money for his city council campaign.  (ECF No. 18-1 at 2.)  Defendant argues it is
16  entitled to summary judgment because Plaintiff's political debt is not "consumer debt" as defined
17  under the FDCPA and Rosenthal Act.  (ECF No. 11 at 2.)  Conversely, Plaintiff argues his debt is
18  "consumer debt" because he "incurred the debt for the purpose of personal growth and career
19  advancement rather than with a profit motive or other business-related purpose."  (ECF No. 17 at
20  2.)  Therefore, the threshold issue is whether Plaintiff's debt is "consumer debt."  *See Turner v.*
21  *Cook*, 362 F.3d 1219, 1226–27 (9th Cir. 2004) ("Because not all obligations to pay are considered
22  debts under the FDCPA, a threshold issue in a suit brought under the Act is whether or not the
23  dispute involves a 'debt' within the meaning of the statute.").

24  The FDCPA and Rosenthal Act are consumer protection statutes.  *See* 15 U.S.C. § 1692;
25  Cal. Civ. Code § 1788.1.  The FDCPA defines "debt" as "any obligation or alleged obligation of a
26  consumer to pay money arising out of a transaction in which the money, property, insurance, or
27  services which are the subject of the transaction are primarily for personal, family, or household
28  purposes." 15 U.S.C. § 1692a(5).  Similarly, the Rosenthal Act defines "consumer debt" as a

"consumer credit transaction" arising "primarily for personal, family, or household purposes." *See* Cal. Civ. Code §§ 1788.2(d)–(f).  In determining whether a debt was incurred "primarily for personal, family, or household purposes," the Ninth Circuit has instructed courts to "examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature." *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (internal quotation marks and citations omitted).  To that end, courts must "look to the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone." *Id.* (citation omitted).

As Plaintiff correctly points out, "no federal court has addressed the question [of] whether an expense personally incurred to promote a campaign for municipal office is a 'consumer debt' under the FDCPA."  (ECF No. 17 at 3.)  In the absence of any authority on point, Plaintiff argues his debt is analogous to student loan debt, which several district courts have found to be "consumer debt."  (*Id.* at 4.)  Plaintiff highlights *Smith v. Progressive Fin. Servs., Inc.*, No. 6:12-CV-1704-MC, 2013 WL 3995004, at *3 (D. Or. Aug. 1, 2013).  In concluding student loan debt was incurred primarily for personal purposes, the *Smith* court stated, "'education' encompasses something broader than mere investment in pursuit of profit. Education, unlike venture capital, cannot be taken by creditors upon default and remains with the consumer throughout his or her life; any skill or knowledge acquired by plaintiff is hers and hers alone." *Id.* (internal citations omitted).  The court also noted, "[i]n contrast, if plaintiff invested her loan in a business and then defaulted, defendant would be provided with ample opportunities to reach such an interest." *Id.* Here, Plaintiff fails to convince the Court that his situation is analogous to student loan debt as a matter of law.  It is undisputed that Plaintiff purchased advertisements from GCM to raise money for his campaign, which would have resulted in a paid position had he been elected.  (ECF No. 18-1 at 2, 5.)  As such, it could be argued that Plaintiff's purpose in at least this specific transaction was for monetary gain, an interest which could be reached by debt collectors.

For its part, Defendant relies heavily on *Slenk*.  (ECF No. 11 at 7–8.)  The plaintiff in *Slenk* was the owner and sole employee of Slenk's Builders, a general contracting business.  236

1  F.3d at 1073.  The plaintiff failed to repay a loan for a backhoe used to construct his home and
2  then filed a FDCPA suit against the debt collectors who sought repayment.  *Id.* at 1073–74.  The
3  district court concluded the plaintiff's debt was commercial and granted summary judgment in the
4  defendant's favor.  *Id.* at 1074.  The Ninth Circuit reversed.  *Id.* at 1077.  The Ninth Circuit
5  acknowledged there was some evidence "the backhoe was purchased strictly for commercial
6  purposes."  *Id.* at 1075.  For example, the invoice stated the backhoe was sold to Slenk's Builders,
7  which as a business paid significantly lower sales tax for the backhoe than the plaintiff would
8  have paid as a consumer.  *Id.*  Further, "the building permits and accompanying documentation
9  for the construction of [the plaintiff's] house and driveway state[d] the work would be done by
10 Slenk's Builders, rather than by [the plaintiff] as an individual."  *Id.*  Finally, the plaintiff's "tax
11 returns characterized the backhoe as a business asset belonging to Slenk's Builders."  *Id.*
12 However, the Ninth Circuit emphasized these facts were not dispositive because other
13 "undisputed objective facts which, when viewed in the aggregate, create[d] a genuine issue of
14 material fact."  *Id.*  Namely, the loan instrument indicated the debt was consumer in nature, the
15 plaintiff used the backhoe to build his family home, the plaintiff testified he never used the
16 backhoe for any other purpose, the plaintiff's business was not licensed to use a backhoe, and the
17 plaintiff sold the backhoe immediately after completing his home.  *Id.* at 1075–76.
18     Defendant argues "[j]ust as the use of the backhoe in *Slenk* was determinative . . . the use
19 of advertising, for political purposes, should also be determinative."  (ECF No. 20 at 5.)
20 Defendant's argument is unpersuasive for two reasons: (1) neither *Slenk* nor any other persuasive
21 authority addresses "political debt"; and (2) the *Slenk* court did *not* conclude that the use of the
22 backhoe was determinative.  The Court will address both issues in turn.
23          A.     Political Debt
24     First, despite Defendant's attempted comparison, *Slenk* did not involve a political
25 campaign.  Whether the plaintiff in *Slenk* purchased the backhoe for personal purposes (to build
26 his home) or commercial purposes (to do work for his contracting business) was a much clearer
27 question than the one presented in the instant case.  Neither party provides — nor can the Court
28 locate — any authority that expressly classifies debts incurred during a political campaign as

6

1   either consumer debt or commercial debt. The only remotely relevant case Defendant cites is

2   *Sohi v. Diversified Adjustment Serv., Inc.*, No. 1:15-cv-00563, 2016 WL 2745298, at *6–8 (S.D.

3   Ohio May 10, 2016).[2] In *Sohi*, the defendant argued the plaintiff could not bring a claim under

4   the FDCPA because the account that owed the debt at issue was an election campaign account

5   and thus was not "created primarily for personal, family, or household purposes" under 15 U.S.C.

6   § 1692a(5). *Id.* at *6. Notably, it was undisputed in *Sohi* "that the account was utilized primarily

7   for purposes other than personal reasons." *Id.* at *8. As such, the court granted summary

8   judgment in the defendant's favor, finding the "[p]laintiff's allegation and supporting proof that

9   the disputed account belonged to an election campaign committee preclude[d] plaintiff from

10  establishing an essential element of his FDCPA claim." *Id.*

11       The Court finds *Sohi* unpersuasive. At the outset, *Sohi* was decided in the Southern

12  District of Ohio, a court that is not bound by *Slenk* or any other Ninth Circuit authority.

13  Moreover, *Sohi* is factually distinguishable from the instant case. The *Sohi* court concluded the

14  campaign debt was not incurred primarily for personal purposes because the parties did not

15  dispute that fact and also because the account at issue belonged to the plaintiff's campaign

16  committee rather than the plaintiff himself. *Id.* In contrast, the parties here *do* dispute whether

17  the purpose of Plaintiff's debt was commercial or personal in nature. Further, there is no election

18  campaign committee in the instant case — it is undisputed Plaintiff was personally responsible

19  for the bill and paid for his own campaign expenses. (ECF No. 18-1 at 4–5.)

20       Defendant also argues "California has regulated politics for decades" and Plaintiff's

21  purchase of campaign advertising clearly falls within the Political Reform Act of 1974's ("PRA")

22  definition of expenditures for political purposes. (ECF No. 11 at 6–7.) In response, Plaintiff

---

[2] Defendant also cites *Person v. Google, Inc.*, No. C 06-7297 JF (RS), 2007 WL 832941, at *7 (N.D. Cal. Mar. 16, 2007). The *Person* court held that the plaintiff — who was "an attorney, businessperson, and candidate for statewide office in New York" — could not bring a California Consumer Legal Remedies Act claim because his stated purpose for using the defendant's online services was "commercial *and* political." *Id.* at *2, 7 (emphasis added). Because *Person* involves a different statutory scheme, it is even less relevant than *Sohi*. More importantly, however, *Person* is devoid of any discussion as to how political debt should be categorized under the FDCPA or Rosenthal Act.

7

argues the election laws Defendant cites govern how political candidates may raise and spend money to ensure fairness in political campaigns and have no bearing on debt collection statutes. (ECF No. 17 at 6.)  The Court agrees with Plaintiff.  The stated purposes of the PRA revolve around protecting the integrity of elections.  *See* Cal. Gov't Code § 81002.  Defendant fails to sufficiently explain how the PRA is relevant to, much less dispositive of, the distinct consumer debt collection issue here.

B.      Whether the Use of the Backhoe in *Slenk* was Determinative

Second, contrary to Defendant's assertion, the *Slenk* court did not conclude that the use of the backhoe was "determinative."  (ECF No. 20 at 5.)  Rather, the *Slenk* court looked at the undisputed facts "in the aggregate," including evidence about the loan instrument, the invoice, the plaintiff's tax returns, and the plaintiff's conduct.  236 F.3d at 1075–76.  Ultimately, the court found there was a genuine issue of material fact as to whether the backhoe was purchased for personal or commercial purposes.  *Id.* at 1076.

Similarly, the record before the Court in the instant case creates a genuine issue of material fact as to whether Plaintiff's debt was personal or commercial.  Although Plaintiff purchased the advertising to raise money, the Court cannot say as a matter of law that Plaintiff's purpose was primarily commercial.  A political campaign is inherently different than a for-profit business.  Further, it is undisputed that Plaintiff instructed GCM to bill him personally, did not register as a campaign committee with the State of California, and paid all campaign-related expenses from his personal bank account.  (ECF No. 18-1 at 4–5 (citing California Government Code § 85201(g)).)  Defendant argues Plaintiff's conduct is akin to a business investment and emphasizes Plaintiff would be receiving a salary if elected.  (ECF No. 18 at 9.)  However, the parties dispute the amount of that potential salary.  Plaintiff presents evidence that he would have been paid $200 a month as a city councilmember (ECF No. 18-1 at 5), while Defendant submits evidence from the California State Controller's website indicating that an Auburn city councilmember earned $12,349 in 2019 (ECF No. 13 at 4)[3].  Regardless of his potential salary, it

---

[3]     Defendant requests the Court take judicial notice of a report of Auburn City Council wages as published on the California State Controller's website.  (ECF No. 13 at 1–4.)  Courts

1  is undisputed Plaintiff owns a store in Auburn and "fully supports himself on the income
2  generated by his business and other investments." (ECF No. 18-1 at 5–6.)  Plaintiff asserts he
3  intended to donate his entire city council salary to local charities and non-profits.  (*Id.* at 6.)
4  Plaintiff further asserts his motive in running for city council was solely to serve his community
5  and he had no interest in, or need for, the salary the position paid.  (*Id.*)

6      Because the foregoing facts establish a genuine dispute of material fact as to whether
7  Plaintiff's debt is a consumer debt — which is an essential element of his FDCPA and Rosenthal
8  Act claims — neither party is entitled to summary judgment.  *See Slenk*, 236 F.3d at 1076 ("[I]t is
9  not the province of the district court to weigh conflicting evidence for purposes of summary
10 judgment."); *see also DeNicolo v. Hertz Corp.*, No. 19-CV-00210-YGR, 2020 WL 5816365, at
11 *6 (N.D. Cal. Sept. 30, 2020) ("[W]hen the objective facts, though undisputed, fall on both sides
12 of a disputed issue, the court may not weigh conflicting evidence for purposes of summary
13 judgment, and the motion must be denied.") (internal citation and quotation marks omitted).

14     **IV.**    **CONCLUSION**
15     For the foregoing reasons, the Court hereby DENIES both parties' Motions for Summary
16 Judgment.  (ECF Nos. 9, 11.)  The parties are ORDERED to file a Joint Status Report no later
17 than thirty (30) days of the electronic filing date of this Order indicating their readiness to
18 proceed to trial and proposing trial dates.
19     IT IS SO ORDERED.
20 Dated:  August 26, 2021

                                        Troy L. Nunley
                                        United States District Judge

---

can judicially notice facts — such those published in a report from a government website — that are not subject to reasonable dispute when the facts "can be accurately and readily determination from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Noting no opposition, the Court GRANTS Defendant's request.  (ECF No. 13.)